# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>$130,000.00 in United States Currency,<br><br>      Defendant. | 3:19-CV-733-MMD-CLB<br><br>**Default Judgment of Forfeiture and Final Judgment of Forfeiture** |

## I. FACTS

On June 17, 2019, at approximately 3:47 P.M., Charles Lafleur was driving a 2019 tan Chevrolet Impala bearing a Tennessee license plate on Interstate 80 westbound in Washoe County, Nevada. Johnny Cintron was the only other occupant of the vehicle.

A WCSO officer, who was also travelling westbound, in his patrol vehicle, observed the Impala following another vehicle at approximately one-and-one-half car's lengths.

The WCSO officer initiated a traffic stop for the following violation of Nevada law: Following Too Closely.

The WCSO officer approached the Impala and made contact with Lafleur and Cintron, both of whom identified themselves with Massachusetts driver licenses. The officer advised the occupants of the reason for the stop.

The Impala was a rental vehicle, and Cintron produced the rental agreement and told the WCSO officer that he was the renter. The officer reviewed the rental agreement, which showed that the vehicle had been rented in Connecticut on June 13, 2019, and was due back in Connecticut on June 20, 2019.

/ / /

The WCSO officer asked Lafleur to exit the vehicle so that the officer could speak with him while completing a warning citation. Lafleur exited the vehicle. In addition, Cintron commented that the reason for the trip was to visit Cintron's father in Sacramento for Father's Day. Father's Day was the day before—June 16, 2019—and Cintron acknowledged that the visit would come late.

The WCSO officer engaged Lafleur in conversation outside of the vehicle while the officer submitted wants-and-warrants checks. Lafleur commented that although they were headed to Sacramento, he and Cintron intended to stop in Reno, Nevada first. That comment raised the officer's suspicions because the location of the stop was past Reno's city proper and nearly at the California border. Lafleur further stated that they intended to stay in Reno for less than half of a day and, then, surprise Cintron's father with their visit in Sacramento, where they planned to stay for a few days to a week before returning to Massachusetts. As noted, the Impala was scheduled to be returned in Connecticut on June 20, 2019, which was three days from the date of the stop.

The WCSO officer asked Lafleur whether the vehicle contained any illegal drugs, firearms, or large amounts of currency. Lafleur responded in the negative. When the officer asked Lafleur for consent to search his belongings, Lafleur granted consent.

As the WCSO officer was conversing with Lafleur, a Nevada Highway Patrol (NHP) officer arrived on scene to provide backup to the WCSO officer. The WCSO officer asked the NHP officer to continue to work on the warning citation while the WCSO officer spoke with Cintron.

The WCSO officer asked Cintron to exit the Impala, which Cintron did. While conversing with Cintron, the officer asked why he had not flown to visit his father. Cintron stated that he was afraid of flying. The officer then asked Cintron whether the Impala contained any illegal drugs or large amounts of currency. Cintron replied that there were no illegal drugs and that the only currency that he possessed was the money in his wallet.

The WCSO relieved the NHP officer and resumed working on the warning citation.
///

The NHP officer then deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine alerted to the presence of the odor of illegal drugs coming from the Impala.

As the NHP officer returned his canine to the vehicle, the WCSO officer continued to converse with Cintron. The officer then advised Lafleur and Cintron that based on the positive canine alert on the Impala, officers would be conducting a probable-cause search of the vehicle.

Inside the Impala's trunk, the WCSO officer found a large black duffel bag, which Lafleur stated belonged to him. Within the duffel bag, the officer discovered a tied off white plastic trash bag with the phrase "Dirty Clothes" written on it. It contained three additional, large empty duffel bags.

Also inside the Impala's trunk, the WCSO officer found an additional, smaller duffel bag. Within the bag, the officer discovered a hair-clipper box. Because the box was much heavier than the officer expected it to be were it containing hair clippers, he searched it further. The officer found another box inside containing a small black bag filled with United States currency. The currency was organized into stacks and secured with rubber bands.

Cintron stated that the bag containing the currency belonged to him. When asked about the amount of currency, Cintron stated: "I don't know." When asked whether the currency belonged to him, Cintron initially said: "I believe so." Cintron then stated that the currency belonged to both him and LaFleur.

The WCSO communicated to Cintron that he believed that the currency was intended to be used to purchase illegal drugs in California. When asked whether he had any illegal-drugs charges on his record, Cintron stated that he did not. When asked about the duffel bags, Cintron said that the bags had no particular purpose.

The WCSO officer also engaged LaFleur in further conversation. When asked about the ownership of the money, LaFluer disclaimed ownership. When asked about the duffel

///

bags, LaFluer stated that he and Cintron planned to use the bags to hold clothing that they were going to purchase.

The WCSO officer again asked Cintron how much money was in the cache. Cintron stated that he did not know how much it totaled.

The WCSO officer completed a Currency Seizure Questionnaire with Cintron, who provided additional details about his trip and the currency:

    a. Cintron initially stated that the source of the currency was earnings from a used car business that he owned from 1998 through 2002, but he then said that he earned the money from 2002 through 2005;

    b. Cintron said that he planned to use the currency to purchase a car in California, but he was unable to provide details about the exact vehicle that he planned to buy and previous arrangements with anyone to buy it;

    c. Cintron now said that the currency totaled between $70,000 and $90,000, but a later official bank count would determine that the currency totaled $130,000;

    d. Cintron stated that his father had invited them to visit him in Sacramento, but LaFleur had said that he and Cintron were going to surprise Cintron's father with the visit;

    e. Cintron stated that they had left Massachusetts around 9:00 A.M. on June 15 and had stopped twice at motels to sleep, each time for nine hours, but with two nine-hour stops it would have been impossible to drive from Massachusetts to the Reno area in less than fifty-three hours;

    f. Cintron stated that he was carrying the currency in the form of cash because he did not like to use banks "sometimes," but he admitted that he maintained bank accounts with Bank of America and TD Bank and he kept and used credit cards.

/ / /

/ / /

4

      g.  Cintron said that he had not subdivided the currency into the individual, rubber-banded bundles, but he would not elaborate about how the money became organized as it was.

The NHP officer placed the bag containing the currency along the roadside in the brush. The WCSO officer, who had not seen where the currency was placed, deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine was a different canine than the canine that had been deployed in the vicinity of the Impala. The canine found the bag of currency and alerted to the odor of illegal drugs coming from it.

At the conclusion of the traffic stop, the WCSO seized the currency.

A later official bank count determined that the currency totaled $130,000.

On June 20, 2019, the DEA adopted the seizure of the currency for federal forfeiture proceedings.

Subsequent investigation revealed that Cintron had a prior felony conviction for an illegal-drugs offense. In 1999, Cintron was convicted in Massachusetts on two counts of Unlawful Manufacture, Distribution, Dispensing, Cultivation or Possession with Intent to Manufacture Class D Controlled Substances.

The $130,000 in United States currency is the entirety of the defendant currency

**II. PROCEDURE**

On December 10, 2019, the United States filed a verified Complaint for Forfeiture in Rem, ECF No. 1, alleging the $130,000 (defendant property):

      a.  is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

      b.  is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances

/ / /

        Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

    c.    is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

    d.    is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

On December 23, 2019, the Court entered an Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 4, and the Clerk issued the Summons and Warrant of Arrest in Rem, ECF No. 5.

Pursuant to the Order, ECF No. 4, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant property: the Complaint, ECF No. 1, the Order, ECF No. 4, the Summons and Warrant, ECF No. 5, and the Notice of Complaint for Forfeiture. Notice was published according to law.

Pursuant to Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons or entities interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice was sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the

official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R. Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on James A. Blum, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Complaint, ECF No. 1; Order for Summons and Warrant, ECF No. 4; Summons and Warrant, ECF No. 5.

On January 21, 2020, the United States Marshals Service served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take into Custody, ECF No. 6.

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from January 14, 2020, through February 12, 2020. Notice of Filing Proof of Publication, ECF No. 7.

On January 16, 2020, the United States Attorney's Office served Charles Lafleur Jr. by regular and certified return receipt mail with the Complaint for Forfeiture in Rem, the Order for Summons and Warrant of Arrest for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest. Notice of Filing Service of Process, ECF No. 8, p. 3, 6-7, 9-25, 27-29.

On January 16, 2020, the United States Attorney's Office served Charles Richard Lafleur by regular and certified return receipt mail with the Complaint for Forfeiture in Rem, the Order for Summons and Warrant of Arrest for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest. Notice of Filing Service of Process, ECF No. 8, p. 3, 6-7, 9-25, 30-32.

1  On January 16, 2020, the United States Attorney's Office served Hertz Vehicles LLC c/o Registered Agent, CT Corp. System, by regular and certified return receipt mail with the Complaint for Forfeiture in Rem, the Order for Summons and Warrant of Arrest for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest. Notice of Filing Service of Process, ECF No. 8, p. 3, 6-7, 9-25, 33-35.

On January 16, 2020, the United States Attorney's Office served Hertz Vehicles LLC by regular and certified return receipt mail with the Complaint for Forfeiture in Rem, the Order for Summons and Warrant of Arrest for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest. Notice of Filing Service of Process, ECF No. 8, p. 3-4, 6-7, 9-25, 36-41.

On March 23, 2020, the United States filed a Settlement Agreement for Entry of Judgment of Forfeiture as to Cintron and Order, regarding the $130,000. Cintron waived, among other things, service of process. Settlement Agreement, ECF No. 9.

On March 23, 2020, the Court entered the Order granting the Settlement Agreement for Entry of Judgment of Forfeiture as to Cintron and Order. Order Granting Settlement Agreement, ECF No. 10.

No person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

Charles Lafleur Jr., a/k/a Charles Richard Lafleur, is not in the military service within the purview of the Servicemen's Civil Relief Act of 2003. Exhibit 1.

Johnny Cintron is not in the military service within the purview of the Servicemen's Civil Relief Act of 2003. Exhibit 2.

Charles Lafleur Jr., a/k/a Charles Richard Lafleur, is neither a minor nor an incompetent person.

Johnny Cintron is neither a minor nor an incompetent person.

On March 31, 2020, the United States filed a Motion for Entry of Clerk's Default against the $130,000; Charles Lafleur Jr., a/k/a Charles Richard Lafleur; Hertz Vehicles,

8

LLC; and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Motion for Entry of Clerk's Default, ECF No. 11.

On April 1, 2020, the Clerk of the Court entered a Default against the $130,000; Charles Lafleur Jr., a/k/a Charles Richard Lafleur; Hertz Vehicles, LLC; and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Entry of Clerk's Default, ECF No. 12

**III.  The Requirements for Default were met.**

    **A.  Legal Standard**

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is demanded in the pleadings pursuant to Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain pursuant to Fed. R. Civ. P. 55(b)(1); (3) publication and personal service were completed pursuant to Fed. R. Civ. P. Supp. Rule G(4); (4) the complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof pursuant to Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Fed. R. Civ. P. Supp. Rule G(5).

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *SATA GmbH & Co. KG v. USA Italco Int'l Ltd.*, No. 3:18-CV-00351-MMD-WGC, 2019 WL 4601513, at *3 (D. Nev. Sept. 20, 2019); *Covenant Care California, LLC v. Shirk*, No. 217CV00956JADVCF, 2018 WL 3429669, at *1 (D. Nev. July 16, 2018).

/ / /

For purposes of a default judgment, the well-pled allegations of the complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

### B.  The Forfeiture Requirements for Default Were Met.

#### a.  Judgment Sought

Pursuant to Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of relief listed in the Complaint for forfeiture.

#### b.  Default and Entry of Default

As shown above, the United States requested entry of Clerk's Default against the $130,000; Charles Lafleur Jr., a/k/a Charles Richard Lafleur; Hertz Vehicles, LLC; and all persons or entities who may claim an interest in the defendant property in the above-entitled action. ECF No. 11. The Clerk entered the Default as requested. ECF No. 12.

#### c.  Notice

Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days. ECF No. 7. Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(b), the United States served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on all known potential claimants. Notice of Filing Service of Process, ECF No. 8.

#### d.  Legal Sufficiency of the Complaint

The Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Complaint described the property with reasonable particularity. The Complaint states where the

seizure of the defendant property occurred and its current location. The Complaint identifies the statute under which the forfeiture action is brought. The Complaint alleges sufficiently detailed facts to support a reasonable belief that the United States will be able to meet its burden of proof at trial. Fed. R. Civ. P. Supp. Rule G(2); Complaint, ECF No. 1.

    e.  Status of Potential Claimants

Johnny Cintron has entered into an approved Settlement Agreement with the United States, ECF No. 10.

No person or entity has filed a claim and the time to file a claim has passed.

**C. The Civil Requirements for Default Were Met.**

    a.  The Plaintiff Would be Prejudiced Without a Judgment

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Complaint established sufficient evidence of the status and forfeitability of the defendant property, and that evidence is uncontested by Charles Lafleur Jr., a/k/a Charles Richard Lafleur, and Hertz Vehicles, LLC. *See United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014), ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.").

    b. & c.  The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.

As shown in the statement of the case above, the government has a clear case against the defendant property and the Complaint sufficiently alleges the facts of the case.

    d.  The Amount of Money at Stake

The value of the defendant property at stake was clearly established in the Complaint, ECF No. 1, and the defendant property is forfeitable pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

/ / /

> Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. Plaintiff has provided evidence that the currency, a sum of $24,000, was furnished or intended to be furnished in exchange for marijuana, a serious violation of federal law.
>
> *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09-CV-2319-LRH, 2010 WL 2695637, at *3 (D. Nev. July 2, 2010) (quotation marks and citation omitted).

The Complaint alleges the serious crime of exchanging or intending to exchange moneys, negotiable instruments, securities, or other things of value for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.,* and 18 U.S.C. § 981(a)(1)(C). The money at stake is the tainted currency related to a completed or contemplated illegal-drugs transaction in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.,* and 18 U.S.C. § 981(a)(1)(C).

  e. <u>There Are No Possible Disputes of Material Fact</u>

No issues of material fact exist and the allegations of the Complaint are established as a matter of law. The defendant property is subject to forfeiture because law enforcement can demonstrate that the defendant property:

  a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

  b. is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

  c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

      d.  is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

    f.  <u>Default Was Not the Result of Excusable Neglect</u>

The record shows that the claimant and potential claimants were properly served with the Complaint, Order, Summons and Warrant, and the Notice and failed to file a claim and answer to the Complaint. There is no evidence of excusable neglect.

    g.  <u>Public Policy Does not Prevent Default Judgment</u>

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, the claimant and potential claimants did not file a claim and an answer to the government's Complaint.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimant(s)] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.
>
> *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

Denying the government's motion would not further public policy. While cases should be decided on the merits when possible, the claimant and potential claimants have not contested the facts of the Complaint or the forfeiture of the defendant property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is appropriate. *See Covenant Care California*, 2018 WL 3429669, at *2.

**IV.  Judgment**

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to Charles Lafleur Jr., a/k/a Charles Richard Lafleur; Hertz Vehicles, LLC; and all persons or entities who may claim an

/ / /

interest in the defendant property and Final Judgment of Forfeiture as to the $130,000 and Johnny Cintron.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Default Judgment of Forfeiture is entered as to Charles Lafleur Jr., a/k/a Charles Richard Lafleur; Hertz Vehicles, LLC; and all persons or entities who may claim an interest in the defendant property in the above-entitled action.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Final Judgment of Forfeiture is entered against the $130,000 and Johnny Cintron.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendant property be, and the same is hereby forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the property shall exist in any other party.

IT IS HEREBY CERTIFIED, pursuant to 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

Date: 4/17/2020

CLERK OF COURT

_____
Signature of Clerk or Deputy Clerk